Nathan M. Smith (023471)
Nathan@Ariano.legal
ARIANO & ASSOCIATES
7600 North 15th Street, #150
Phoenix, Arizona, 85020
Tel. 602.666.0050
Fax 602.660.0277
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Emmitt Thompson, M.D., an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Dignity Health, d/b/a Barrow Neurological Institute, a California corporation, Defendant | No. _____<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

Plaintiff Dr. Emmitt Thompson, through his attorney, alleges that:

**JURISDICTION AND VENUE**

1.   Jurisdiction in this Court is authorized by 28 U.S.C. § 1331.  The Court has jurisdiction because one of the the claims arises out of Title 7 of the Civil Rights Act of 1964 and  42 U.S.C. § 1981.

2.  Jurisdiction is authorized by 42 U.S.C. § 2000e-5 because Plaintiff presented his charge to the EEOC within 300 days of the adverse action and filed his complaint within 90 days of receipt of a right to sue letter.

3.  This Court is an authorized venue for this action because the alleged conduct at issue that gives rise to the Complaint occurred in the State of Arizona, Maricopa County. 28 U.S.C. § 1391(b).

## THE PARTIES

4.  Plaintiff Emmitt Thompson is a doctor who worked and resided in Maricopa County, Arizona during all times material to his complaint.

5.  Defendant Dignity Health is a California corporation registered and doing business in Maricopa County, Arizona as Barrow Neurological Institute. Plaintiff is informed and believes and thereon alleges that Defendant employs more than five hundred employees.

## PERTINENT FACTS

6.  Dr. Thompson is a M.D. and veteran of the United States Navy, where he served honorably from 1995 to April of 2000. While serving, he received the good conduct medal and other achievement awards. Dr. Thompson was a 3rd class petty officer. Dr. Thompson obtained his doctorate from Meharry Medical College in 2013.

7.  Dr. Thompson successfully completed his internship year in internal medicine at Metro General Hospital in Nashville, Tennessee in 2014-2015.

8.  During that year Dr. Thompson applied and was admitted for the next year of his residency to the neurology program at the Barrow Neurological Institute ("Barrow") in

Maricopa County, Arizona.   Dr. Thompson began his second year of residency at the Barrow Neurological Institute on or about July 1, 2015.

9.   Upon accepting the position as resident with Barrow, Dr. Thompson entered into a residency contract with Barrow for his services.

10.   The contract provided that Dr. Thompson's residency contract would be renewed for subsequent years unless Dr. Thompson failed to "satisfactorily perform the duties and obligations" of a resident.

11.   At all times, Dr. Thompson satisfactorily performed the duties and obligations of a resident.

12.   Dr. Thompson was the only black resident in the program.

13.   From the beginning of his employment at Barrow, Dr. Thompson was subject to discriminatory treatment by at least one attending physician.   For example, Dr. Thompson was criticized and disciplined for conduct for which other non-black residents were not criticized or disciplined.

14.   On or about January 29, 2016, Dr. Thompson was suspended and accused of causing a bad patient outcome.   Dr. Thompson was told he could appeal that decision under grievance policy 300.001.

15.   Dr. Thompson did appeal that decision.   Rather than defend the decision to suspend him and blame him for the patient outcome, Barrow decided instead to place Dr. Thompson on a performance improvement plan.

16.   In or around February of 2016 Dr. Thompson was placed on a performance improvement plan designed to supplement his duties with additional education.   The

performance improvement plan included regular "homework" and testing to determine whether Dr. Thompson was successfully progressing. The plan was scheduled to run from April through the end of June of 2016.

17. Dr. Thompson performed well under the performance improvement plan, and was exceeding the goals set for him under the plan. Dr. Thompson also performed better than other similarly situated, non-black residents on other objective measures of competency, such as the Neurological RITE Exam.

18. Despite this his progress, on or about May 31, 2016, Dr. Thompson was informed by Barrow officials that the Clinical Competency Committee had met and determined that he had not shown sufficient progress to advance to the next year of residency. He was told that his contract would not be renewed and that he would not be permitted to continue as a resident at Barrow.

19. Dr. Thompson is informed and believes and therefore alleges that this decision was driven by the attending physician that discriminated against Dr. Thompson because of his race and that the decision was discrimination because of his race.

20. At that meeting Dr. Thompson was informed that he could appeal this decision and was provided with a Dignity Health policy numbered 300.021 "Grievance and Problem-Solving." Dr. Thompson was told that this policy applied to the committee decision not to renew his residency contract.

21. The "Grievance and Problem-Solving" policy states that a resident may initiate a grievance by meeting with the program director. After that meeting, a resident may submit an appeal "in writing to the program director's attention within 10 calendar days."

22. Upon submission of a written appeal, the program director "shall respond to the resident's grievance in writing, with a copy to the DIO [Designated Institutional Official], within 7 calendar days of receipt of the written" appeal.

23. Upon receipt of the program director's response, the residence may again appeal "in writing to the DIO within 7 calendar days."

24. On Monday, June 6, 2016, Dr. Thompson met with the program director to appeal the decision. At that meeting he was told he the decision to not renew his residency was made without regard to his successful participation in the performance improvement plan. Dr. Thompson's in-person appeal was denied at that meeting.

25. On June 8, 2016, Dr. Thompson submitted a written letter of appeal as required by the relevant grievance policies.

26. Dr. Thompson's written appeal was timely under either grievance policy 300.021 or policy 300.001.

27. Dr. Thompson then received a response to his written appeal stating that it would not be considered because it was untimely under an alternate grievance procedure, policy 300.001.

28. Dr. Thompson made efforts to contact the Designated Institutional Official to explain why Barrow was mistaken. Barrow did not respond to these efforts.

29. The merits of Dr. Thompson's appeal were never considered.

## DEMAND FOR JURY TRIAL

30. Plaintiff demands a jury trial on all counts.

## COUNT I

### Race-Based Discrimination in Violation of Title VII

31. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

32. Defendant was at all times an "employer" within the meaning of 42 U.S.C. § 2000e(a).

33. Defendant intentionally discriminated against Dr. Thompson on account of his race, in violation of Title VII of the Civil Rights Act of 1964 by denying Dr. Thompson equal terms, conditions and privileges of employment. Dr. Thompson was unfairly criticized, terminated and denied the benefits, terms and conditions of his employment because of his race.

34. As a direct result, Dr. Thompson suffered mental and physical harm, shame, embarrassment and lost compensation.

35. Defendant's conduct described above was aggravated, outrageous and guided by an evil mind; accordingly, Dr. Thompson is entitled to an award of punitive damages against Defendants.

## COUNT II

### Race-Based Discrimination in Violation of 42 U.S.C. § 1981

36. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

37. Plaintiff is black, therefore a member of non-white racial minority.

38. Plaintiff's employment with Defendant was contractual in nature.

39. Defendant discriminated against Plaintiff based on his race by terminating the employment relationship and denying Plaintiff enjoyment of all the benefits, privileges, terms and conditions of the relationship.

40. Defendant refused to enforce its policies in an even-handed, racially neutral manner for Plaintiff, and imposed requirements and standards on Plaintiff that were not placed on non-black employees.

41. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff was damaged in the form of lost wages and benefits, emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

42. Defendant's conduct described above was aggravated, outrageous and guided by an evil mind; accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## COUNT III

### Breach of Contract

43. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

44. Plaintiff and Defendant entered a residency contract.

45. Plaintiff at all times fulfilled his obligation under the residency contract.

46. Defendant breached the contract by denying without consideration on the merits Plaintiff's appeal of the decision to terminate his employment.

47. Plaintiff has suffered damages resulting from such breach, including loss of income, loss of future income, and damage to his reputation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendants' conduct;

B. For an award of compensatory damages for mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life and other losses incurred by Plaintiff as a result of Defendants' conduct.

C. For an award of punitive damages;

D. For an award of attorneys' fees and related expenses;

E. For an award of prejudgment and post-judgment interest;

F. For an award of Plaintiff's costs of suit; and

G. For such other relief as the Court may deem just and proper.

Dated this 25th day of May, 2017,

/s/Nathan M. Smith_____

Nathan M. Smith
Attorney for Plaintiff