**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emmitt Thompson, | No. CV-17-01607-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Dignity Health, | |
| Defendant. | |

Plaintiff Emmitt Thompson ("Dr. Thompson") was a second-year medical resident at Barrow Neurological Institute ("BNI").[1] BNI did not renew Dr. Thompson's contract for his third year of residency. Dr. Thompson sued BNI for race discrimination, defamation, and breach of contract. (Doc. 29.) The Court granted BNI summary judgment on all counts. (Doc. 100.) BNI requested taxable costs, and the Clerk of Court entered a taxation judgment against Dr. Thompson in the amount of $8,362.22. (Docs. 104, 113.) BNI now moves for attorneys' fees of $93,401.67 and related non-taxable costs of $14,439.28, and Dr. Thompson moves for review of the Clerk's taxation judgment. (Docs. 110, 115.) BNI's motion is granted in part and denied in part, and Dr. Thompson's motion is denied.

**I.    BNI's Motion For Attorneys' Fees**

BNI moves for an award of reasonable attorneys' fees and related non-taxable

---
[1] Defendant Dignity Health is a California corporation registered and doing business in Maricopa County, Arizona as Barrow Neurological Institute. (Doc. 29 at 2.) The Court will refer to Defendant as BNI to ensure consistency with the Court's order granting summary judgment. (Doc. 100.)

expenses, requesting a total of $93,401.67 in attorneys' fees ($88,979.17 for defending the action and $4,422.50 for preparing the motion) and $14,439.28 in non-taxable expenses. (Doc. 110 at 9.) Dr. Thompson objects, arguing that BNI's requested attorneys' fees are for work that was related to his civil rights claim, and therefore may not be awarded. (Doc. 116 at 2.) Dr. Thompson argues, in the alternative, that BNI is entitled only to $4,442.50[2] in attorneys' fees for work performed exclusively in defense of the contract claim. (Doc. 116 at 4.) Dr. Thompson also challenges the non-taxable costs and the award of fees for work related to preparing the motion seeking fees. (Doc. 116 at 14–17.)

### A. Arizona's Contract Fee Award Statute

In Arizona, attorney fees may be awarded in "any contested action arising out of a contract, express or implied." A.R.S. § 12-341.01. However, where contract claims are intertwined with nonfrivolous federal civil rights claims, as here, "the pro-rata allocation of general fees between claims for which a fee award is appropriate and claims for which such an award is not appropriate, based solely on the number of claims, is impermissible, for reasons that go to the heart of our civil rights policy." *Harris v. Maricopa Cty. Superior Court*, 631 F.3d 963, 971 (9th Cir. 2011). Because Dr. Thompson's civil rights claims were not "frivolous, unreasonable, or without foundation," *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421 (1978), as BNI has implicitly conceded, BNI's requested fee award of "one-third of its fees incurred in this action, as the contract claim was one of three claims in the case," is not allowed. (Doc. 110 at 5.)

The Ninth Circuit has clearly held that because "under Arizona law it is impermissible to require a plaintiff to pay fees that a prevailing defendant incurred in whole or in part defending against nonfrivolous civil rights claims," "the only fees that may be attributed to [a plaintiff's] contract[] claims for purposes of § 12.341.01(A) are those that the defendants are able to demonstrate would not have been incurred but for the inclusion of those claims in the complaint." *Harris*, 631 F.3d at 972–73. Each time entry a prevailing defendant seeks a fee award for must be *exclusively* for work performed "in order to

---
[2] Dr. Thompson later refers to "the $3,727.50 award that Dignity Health could be eligible for," but does not indicate the source for this lower number. (Doc. 116 at 7.)

- 2 -

provide a defense against claims for which fees are permissible." *Id.* at 973.

The Court follows the Ninth Circuit's guidance that in a mixed civil rights and contract case such as the present case, "under Arizona law [the Court must] include only fees for legal work that was not performed in whole or in part in order to defend against the nonfrivolous civil rights claims." *Id.* at 975.

B. *Time Spent Exclusively On Contract Matters*

Accordingly, the Court turns to the eighteen individual time entries the parties have identified as relating to the contract claim to determine the award for which BNI is eligible.

1. August 8, 2017: .7 hours, fee $175. Conceded by Dr. Thompson. (Doc. 116 at 4.)
2. August 21, 2017: .4 hours, fee $100. Conceded by Dr. Thompson. (Doc. 116 at 5.)
3. January 9, 2018: .4 hours, fee $120, for "Correspondence with C. Schusse and S. Muley regarding meeting with plaintiff about appeal." (Doc. 111-1 at 11.) The Court accepts BNI's explanation that the factual investigation of the May 31, 2016 and June 6, 2016 meetings related to the contract claim and not the civil rights claims, and this $120 fee is therefore permissible. (Doc. 117 at 3 n.1.)
4. January 29, 2018: 1.6 hours, fee $400, to "Review and analyze audio recordings regarding May and June 2016 meetings with Thompson for purposes of modifying case memorandum." (Doc. 111-1 at 13.) Because the Court accepts BNI's explanation that the factual investigation of the May and June 2016 meetings related to the contract claim and not the civil rights claims, this $400 fee is permissible.
5. January 29, 2018: 1.3 hours, fee $325. Conceded by Dr. Thompson. (Doc. 116 at 5.)
6. January 30, 2018: 2.1 hours, fee $525, to "Begin draft of case update to client by analyzing strengths of Plaintiff's discrimination and breach of contract claims." (Doc. 111-1 at 14.) This fee is for legal work that was performed in part

to defend against non-frivolous civil rights claims. No fees are awarded.

7. March 27, 2018: 2.7 hours, fee $675. Conceded by Dr. Thompson. (Doc. 116 at 5.)
8. April 4, 2018: .4 hours, fee $120. Conceded by Dr. Thompson. (Doc. 116 at 5.)
9. May 31, 2018: .4 hours, fee $120, for "Correspondence with S. Muley, C. Schusse, and A. Chowdhury-Johnson regarding calendar records to show meeting with plaintiff." (Doc. 111-1 at 36.) Because the Court accepts BNI's explanation that the factual investigation of the May and June 2016 meetings related to the contract claim and not the civil rights claims, this $120 fee is permissible.
10. June 4, 2018: .8 hours, fee $240. Conceded by Dr. Thompson. (Doc. 116 at 5.)
11. June 20, 2018: .6 hours, fee $180. Conceded by Dr. Thompson. (Doc. 116 at 5.)
12. June 22, 2018: .7 hours, fee $175. Conceded by Dr. Thompson. (Doc. 116 at 5.)
13. June 22, 2018: 1.1 hours, fee $275, to "Analyze case law regarding plaintiff's breach of contract claims in preparation of motion for summary judgment." (Doc. 111-1 at 38.) This $275 fee is permissible because it relates exclusively to the contract claim.
14. June 22, 2018: 3.7 hours, fee $925. Conceded by Dr. Thompson. (Doc. 116 at 5.)
15. June 23, 2018: 1.6 hours, fee $400. Conceded by Dr. Thompson. (Doc. 116 at 5.)
16. June 26, 2018: .3 hours, fee $90. Conceded by Dr. Thompson. (Doc. 116 at 5.)
17. September 15, 2018: .5 hours, fee $137.50. Conceded by Dr. Thompson. (Doc. 116 at 5.)
18. September 17, 2018: 3.6 hours, $990, to "Draft reply in support of motion for summary judgment including portion on contract claim." (Doc. 111-1 at 43.) If the contract claim was a "portion" that was "include[ed]" in the section of the reply that was drafted on this date, then the work was not performed exclusively

in relation to the contract claim and was instead performed in part to defend against non-frivolous civil rights claims. No fees are awarded.

Therefore, the total permissible fee award relating exclusively to the contract claim which BNI is eligible to recover is $4,457.50.

*C. Associated Indemnity Factors*

Simply because BNI is eligible to recover a maximum of $4,457.50 in fees does not mean BNI is entitled to those fees; the Court must consider the factors outlined in *Associated Indemnity Corporation v. Warner*, 143 Ariz. 567 (1985) and decide that a fee award is warranted. *Harris*, 631 F.3d at 974. There are six *Associated Indemnity* Factors:
> (1) whether the unsuccessful party's claim or defense was meritorious; (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the successful party prevailed with respect to all of the relief sought; (5) whether the legal question presented was novel and whether such claim or defense have previously been adjudicated in this jurisdiction; and (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees.

*Id.* at 974 n.3 (quoting *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 394 (1985)).

First, Dr. Thompson's contract claim was not meritorious. The Court previously held that "under the plain terms of the contract, BNI did not breach the Agreement in declining to reappoint Dr. Thompson and renew his contract." (Doc. 100 at 20.) Dr. Thompson does not argue that this claim had merit, but only that the Court erred in relation to the other aspect of his contract claim when the Court "constru[ed] the contract to mean that Dr. Thompson's first meeting on May 31, 2016 was a part of the appeal process." (Doc. 116 at 8.) Dr. Thompson has provided no legal authority to support his conclusion that the Court erred. (Doc. 116 at 7–8)

Second, the stark contrast in the parties' representations of the non-monetary settlement terms indicate that BNI's litigation efforts were not completely superfluous. BNI describes the equitable relief at issue as an "unrealistic demand," Doc. 110 at 4, and "a face-to-face confrontation with the physicians he believed wronged him," Doc. 117 at

4, and asserts that Dr. Thompson did not respond to either BNI's last mediation demand or BNI's settlement offer regarding attorneys' fees. (Doc. 117 at 4.) Dr. Thompson, in contrast, describes the equitable relief as a request for BNI "to discuss with him and consider more objective measures of achievement, such as quizzing or written testing, rather than relying on subjective evaluations that favor people with better access to mentors and often result in better marks for people who look like their teachers than those of diverse backgrounds . . . The mediation . . . failed because [BNI] was unwilling to meet with Dr. Thompson and discuss his concerns about race discrimination." (Doc. 116 at 8–9.) Dr. Thompson does not assert that he responded to BNI's last mediation demand or BNI's settlement offer regarding attorneys' fees, but confirms that BNI did engage in attempts to settle the present motion. (Doc. 116 at 13.)

Third, assessing fees against Dr. Thompson would not cause extreme hardship. Dr. Thompson has provided evidence of an annual salary of $130,000, and has not provided the necessary prima facie evidence of financial hardship. *See O'Connor v. Phoenix Sch. of Law, LLC*, No. CV-13-01107-PHX-SRB, 2014 WL 12672226, at *2 (D. Ariz. May 20, 2014). Fourth, BNI prevailed with respect to all relief sought. Fifth, the legal questions were not novel.

Sixth, the award would not discourage other parties with tenable civil rights claims from litigating legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees. BNI incurred attorneys' fees in the amount of $266,937, of which only $4,457.50 is eligible for award pursuant to A.R.S. 12-3401.01. (Doc. 110 at 3.) This is approximately 1.7% of the total fees incurred.

The *Associated Indemnity* factors weigh in favor of awarding $4,457.50 in attorneys' fees.

D. Local Rule 54.2

    a. <u>Reasonableness Factors</u>

Local Rule 54.2 requires the Court consider a variety of other factors, in addition to the *Associated Indemnity* factors, in determining the reasonableness of the requested fee

award.[3]

The time and labor of counsel weigh in favor of the requested fee award. Two associates, Kristen Briney and Nicole Simmons, performed 6.7 and 7.6 hours (respectively) of the contract-related work, while Lindsay Fiore, a partner, performed 2.9 hours of the contract-related work. (*See* Doc. 111 at 2–3, Doc. 111-1 at 2–43.) The questions presented were not novel or difficult, and no *unique* skills were required to perform the legal service properly, but BNI's counsel achieved success on all claims. BNI's counsel performed over 1,100 hours of legal work on this matter, which precluded other employment. (Doc. 111 at 5–6.) The Court credit's Ms. Fiore's declaration regarding customary fees, and notes that Dr. Thompson provided no evidence casting doubt on Ms. Fiore's conclusions. (Doc. 116 at 11–12.)

The amount of money involved was substantial: nearly $2,000,000 in lost earnings damages and unspecified emotional distress and punitive damages. (Doc. 110 at 7; Doc. 111-1 at 112.) Through the efforts of counsel, BNI obtained summary judgment on all counts. BNI's counsel have established the requisite experience, reputation, and ability to merit an award of fees, and have represented BNI in at least 15 separate employment litigation matters over several years. (Doc. 110 at 8; Doc. 111 at 5.)

The Court concludes that the requested fee of $4,457.50 is reasonable pursuant to Local Rule 54.2.

### b. Supporting Documentation

Local Rule 54.2(d) requires all motions for attorneys' fees include a statement of consultation, a fee agreement, a task-based itemized statement of fees and expenses, and an affidavit of moving counsel. Dr. Thompson challenges BNI's failure to include the statement of consultation and an "adequate[]" description of the fee agreement with the motion. (Doc. 116 at 13–14.)

The Court may, in its discretion, consider a motion for attorneys' fees that lacks a statement of consultation that complies with Local Rule 54.2(d)(1), and does so here. *Gary*

---

[3] The nature of the fee agreement, any potential time limitations, the undesirability of the case, and awards in similar actions are not relevant factors in this case.

*v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 483 (D. Ariz. 2019). BNI demonstrated attempts to settle the attorneys' fees and costs in good faith in both motions for an extension of time to file the instant motion. ("The parties are also currently discussing a potential resolution to this matter," Doc. 102 at 2; "The parties are still having ongoing discussions about resolution of this matter, and Dignity Health is hopeful the parties will be able to reach an agreement shortly." Doc. 106 at 2.) This is "in accordance with the purpose behind the rule." *Gary*, 398 F. Supp. 3d at 483 (collecting cases).

As to the fee agreement, Ms. Fiore provided a statement to the effect that no written fee agreement specifically applicable to this case exists, and recited the core terms of the fee agreement, in accordance with Local Rule 54.2(d)(2). (*See* Doc. 111 at 2, 4.)

### E. Non-Taxable Costs

BNI originally requested $14,439.28 in non-taxable costs. (Doc. 110 at 9.) But non-taxable costs "may not be included in an award of attorneys' fees made pursuant to A.R.S. § 12–341.01." *Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Bach*, 193 Ariz. 401, 404 (1999); *Harris*, 631 F.3d at 979–80.

### F. Fees for Preparing the Motion for Attorneys' Fees

The purpose of the attorney fee award under A.R.S. § 12-341.01 is "to mitigate the burden of the expense of litigation to establish a just claim or a just defense." A.R.S. § 12-341.01(B); *see Gametech Int'l, Inc. v. Trend Gaming Sys., L.L.C.*, 380 F. Supp. 2d 1084, 1101 (D. Ariz. 2005) (citing *Associated Indemnity*, 143 Ariz. at 569). "Including the reasonable time to prepare an attorney's fees application in an award of attorney's fees to the prevailing party furthers the purpose of awarding such fees." *Gametech*, 380 F. Supp. 2d at 1101. Fee awards for the preparation of a successful fee application are "subject to the same reasonableness determination as all other attorneys['] fees awards." *Harris*, 631 F.3d at 979.

BNI requests $4,422.50 in fees incurred in preparing the motion for attorneys' fees. Because BNI based its fee calculation on a clearly impermissible approach to a case presenting a mix of nonfrivolous civil rights and contract claims, as discussed *supra*, I.A.,

- 8 -

the Court will not consider awarding fees for the legal research which yielded such a conclusion, or for the time to draft the impermissible portion of the motion, which the Court estimates at approximately 30 percent of the motion. Therefore, BNI is eligible to recover only $3,000 in fees relating to the preparation of the motion for attorneys' fees.[4]

## II. Dr. Thompson's Motion for Review of Taxation of Costs

On April 4, 2019, the Clerk of the Court taxed $8,362.22 in costs against Dr. Thompson. (Doc. 113.) Dr. Thompson now asks the Court to review the Clerk's action, exercise discretion, and decline to tax any costs. (Doc. 115.)

Dr. Thompson relies on *Association of Mexican-American Educators v. State of California*, 231 F.3d 572 (9th Cir. 2000) to claim it would be inappropriate and inequitable to tax costs against him, but he draws the wrong conclusion from that case by concluding that all Title VII plaintiffs would be intimidated from filing their claims if there was a risk that costs would be imposed. (Doc. 115 at 3.) In *Mexican-American Educators*, a class of minority candidates sued the State of California challenging the use of a screening test which had a disparate impact on minorities. *Mexican-American Educators*, 231 F.3d at 578. Because Fed. R. Civ. P. 54(d)(1) "establishes that costs are to be awarded as a matter of course in the ordinary case," the Ninth Circuit's "requirement that a district court give reasons for denying costs is, in essence, a requirement that the court explain why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award costs." *Id.* at 593. *Mexican-American Educators* was an extraordinary case because the plaintiffs in that case had demonstrated limited resources; the issues were "of the gravest public importance" and were "close and complex"; the case affected "tens of thousands of Californians and the state's public school system as a whole"; and the costs ($216,443.67) were "extraordinarily high." *Id.*

Dr. Thompson, to the contrary, earned $130,000 per year working part time during the pendency of the litigation, and his vocational expert opined that in 2020 his income

---

[4] Of the $1,422.50 requested but not awarded, $665 was deducted for the 1.9 hours of legal research and legal writing performed on March 18 and 20, 2019, and $757.50 represents approximately 30 percent of the $2555 in fees incurred drafting the motion.

would be $137,917 if he continued to work part time, but $190,550 if he chose to take a full-time position as a primary care physician in Phoenix. (Doc. 111-1 at 112–13.) The costs therefore constitute at most 6%, and as little as 4.4%, of one year of Dr. Thompson's income. Dr. Thompson sued one health care provider, about one of its residency programs, with classes of fewer than a dozen people per year, not an entire state about a public school system that affected tens of thousands of people. It is not inappropriate or inequitable to tax costs against him. Therefore, Dr. Thompson's motion for review of the Clerk's taxation of costs is denied.

Accordingly,

**IT IS ORDERED** BNI's Motion for Award of Attorneys' Fees and Related Non-Taxable Expenses (Doc. 110) is **GRANTED IN PART** and **DENIED IN PART**. Dr. Thompson shall pay BNI $4,457.50 in attorneys' fees and an additional $3,000 for fees incurred in preparing the fee motion.

**IT IS FURTHER ORDERED** Dr. Thompson's Motion for Review of Clerk's Taxation of Costs (Doc. 115) is **DENIED**. The taxation of $8,362.22 in costs is therefore final.

Dated this 17th day of January, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge