**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 28 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EMMITT THOMPSON, MD, an individual,<br><br>   Plaintiff-Appellant,<br><br>   v.<br><br>DIGNITY HEALTH, DBA Barrow Neurological Institute, a California corporation,<br><br>   Defendant-Appellee. | No.   19-15635<br><br>D.C. No. 2:17-cv-01607-ROS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted July 7, 2020
Seattle, Washington

Before: FERNANDEZ and NGUYEN, Circuit Judges, and BOULWARE,[**] District Judge.

Appellant Dr. Emmitt Thompson brought a 42 U.S.C. § 1983 claim against

his former employer, Barrow Neurological Institute ("BNI" dba Dignity Health),

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The Honorable Richard F. Boulware II, United States District Judge for the District of Nevada, sitting by designation.

alleging that the nonrenewal of his residency contract with BNI was due to race discrimination. Dr. Thompson also brought breach of contract and defamation claims. The district court granted summary judgment to BNI on all claims and excluded the majority of Dr. Thompson's expert witness testimony. We affirm the district court's decision with the exception of the defamation claim.

We have jurisdiction over orders granting motions for summary judgment under 28 U.S.C. § 1291. We review a grant of summary judgment *de novo*. *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1001 (9th Cir. 2019). Summary judgment may be granted when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review a decision to exclude expert testimony for abuse of discretion, even in the context of a motion for summary judgment. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1227 (9th Cir. 1998).

We agree with the district court that Dr. Thompson failed to make out a prima facie case for employment discrimination because he failed to establish that he was performing his job to his employer's satisfaction. *See Weil*, 922 F.3d at 1003–04 (holding that plaintiff must show "satisfactory" performance to establish prima facie case of discrimination).  Dr. Thompson's various performance reviews indicated that his performance was steadily declining, that he was placed on a performance improvement plan but failed to improve satisfactorily, and that he had

been warned that termination was a possible outcome if his performance failed to improve. Dr. Thompson argues that he has met his burden because the requisite level of proof to establish a prima facie Title VII case at summary judgment need not rise to the level of preponderance of the evidence. Dr. Thompson, however, presented essentially no evidence other than his own uncorroborated self-assessment and inadmissible expert testimony to establish that he was meeting his employer's expectations and performing satisfactorily. We find based on the instant record that Dr. Thompson failed to meet even the lower standard at the summary judgement stage. *Id*. at 1003.

We also agree with the district court that Dr. Thompson failed to produce evidence sufficient to establish that BNI's legitimate, nondiscriminatory reason for terminating Dr. Thompson's residency was pretext for racial discrimination.

A Title VII plaintiff can demonstrate pretext either directly—by showing that discrimination more likely motivated the employer—or indirectly, by showing that the employer's explanation is unworthy of credence. *Vazquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Dr. Thompson does not meet either threshold for establishing pretext. Dr. Thompson presents no evidence of bias[1]

---

[1] Dr. Thompson states both that he has a learning disability and that he is a United States veteran with a 10% disability rating for Major Depressive Disorder recurrent. Dr. Thompson also mentions his diagnosis of dyslexia in his deposition. But Dr. Thompson does not bring any claim under the Americans with Disabilities Act and does not allege discrimination based on either of these disabilities.

other than conclusory, self-serving statements in his declaration and deposition that he believed that two doctors were discriminating against him. He concedes that he never heard the doctors make comments about his race or make racially insensitive comments generally. Dr. Thompson describes being left out of certain social events and not being given certain tasks to do as a resident but does not establish that any of this occurred because of his race. He submits no evidence of similar treatment given to other African-American residents or suggesting that his negative performance assessments and evaluations were embellished. He also submits no evidence of preferential treatment afforded non-African-American residents other than his own self reports. Rather, the record establishes a year's worth of evaluations that indicate persistent underperformance.

Dr. Thompson also argues that a jury could infer pretext because Arizona law requires doctors and health care institutions to report to the Arizona medical board any information that appears to show that a doctor may be medically incompetent, but BNI did not report Dr. Thompson to the Arizona medical board. *See* Ariz. Rev. Stat. Ann. § 32-1451(A). We disagree with Dr. Thompson's logic here. The standard triggering BNI's reporting obligation—that a doctor appears "medically incompetent," "guilty of unprofessional conduct," or "mentally or physically unable safely to engage in the practice of medicine," *id.*—is high. BNI reasonably could have decided to terminate Dr. Thompson for far less serious

performance lapses. And in fact BNI recommended Dr. Thompson to another residency program where he would be a better fit. For these reasons we agree that Dr. Thompson failed to demonstrate that BNI's reasons for terminating his employment were pretext for racial discrimination.

We also agree that the district court did not abuse its discretion in rejecting the majority of Dr. Thompson's expert witness's testimony on the grounds that the expert, a neurologist, was not qualified to talk about graduate medical education and her conclusions were mostly speculative.[2] Dr. Shefrin's expert report and deposition testimony did not actually concern Dr. Shefrin's expertise in neurology. We have previously explained when assessing the admissibility of expert testimony that "[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). Dr. Shefrin's testimony fails to meet this standard. Dr. Shefrin's underlying knowledge and training as a neurologist did not establish that she was qualified to give opinions about graduate medical residency education, which makes Dr. Shefrin's testimony not relevant. Dr. Shefrin's testimony was also not reliable because it was not based

---

[2] The lower court deemed admissible the portion of the expert report that concerns whether Dr. Clark appropriately criticized Dr. Thompson for admitting a patient with Parkinson's disease to the stroke service.

on her knowledge and relevant discipline but was instead based almost entirely on speculation of other physicians' interactions with Dr. Thompson.

We also do not find that Dr. Thompson established a breach of contract claim as the undisputed facts demonstrate that Dr. Thompson's appeal was untimely. We further find it inappropriate to consider Dr. Thompson's bad faith argument on this claim as it was not previously raised before the district court. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

We do, however, disagree with the district court that no reasonable juror could find in favor of Dr. Thompson on his defamation claim. Under Arizona law, a person is liable for defamation if he has knowledge that a statement is false and acts in reckless disregard of such matters or acts negligently in failing to ascertain such matters and nevertheless publishes the statement. *Peagler v. Phx. Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977). A defamation claim does not lie, however, if the statement at issue was substantially true. *Read v. Phx. Newspapers, Inc.*, 819 P.2d 939, 941 (Ariz. 1991) ("Slight inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication is justified.").

The statements at issue concern how Dr. Muley filled out the Certificate of Completion of Postgraduate Training required by the Medical Board of California. Dr. Muley indicated on the form that Dr. Thompson had been "terminated,

dismissed or expelled," "placed on probation," "disciplined or placed under investigation," and that the program had declined "to renew" Dr. Thompson's postgraduate training program contract. Dr. Thompson argues that Dr. Muley's answers to the form were defamatory because Dr. Thompson was never on probation and was never terminated or dismissed. BNI argued in response, and the lower court agreed, that Dr. Muley's statement taken in context was substantially true. However, we find that there are reasonable differing interpretations as to whether or not the distinction here between nonrenewal of a contract and termination or dismissal constitutes a "slight inaccuracy" or is a substantive factual misstatement. *Read*, 819 P.2d at 941. "In most instances, it is for the jury to determine whether an ordinary reader or listener would believe the statement to be a factual assertion, mere opinion or hyperbole." *Burns v. Davis*, 993 P.2d 1119, 1129 (Ariz. Ct. App. 1999). Because the meaning of these terms may be subject to different interpretations, it was inappropriate for the district court to resolve this question on a summary judgment motion. *See Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) ("Where there are undisputed facts from which different ultimate inferences might reasonably be drawn and as to which reasonable persons might differ, the case is not suitable for summary judgment."). We therefore reverse the district court's grant of summary judgment as to the defamation claim.

**AFFIRMED IN PART, REVERSED IN PART and REMANDED.**